**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:17-cr-20147-TLP |
| v. ) | |
| ) | |
| DE'LEWIS HOLLINS, ) | |
| ) | |
| Defendant. ) | |

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS AND DENYING DEFENDANT'S OBJECTIONS TO THE REPORT AND RECOMMENDATION**

Defendant De'Lewis Hollins ("Defendant") moved to suppress his statements and other evidence recovered in this case based upon alleged violations of his Fifth, Sixth and Fourteenth Amendment rights. (ECF No. 33.) The Motion was referred to Magistrate Judge Charmaine Claxton, who held a hearing on January 18, 2018. (Minutes, ECF No. 45.) On March 16, 2018, Magistrate Judge Claxton issued a Report and Recommendation ("R & R") on Defendant's Motion to Suppress recommending the Motion should be denied because the record did not support findings that Mr. Hollins' Fifth, Sixth or Fourteenth Amendment rights were violated in eliciting his statements. (R&R, ECF No. 49.) Moreover, the Magistrate Judge recommended that no evidence be suppressed pursuant to the fruit of the poisonous tree doctrine. (ECF No. 49.) Mr. Hollins filed timely objections to the R & R on April 1, 2018, and the prosecution filed its Response shortly thereafter. (Response, ECF Nos. 54, 58.)

## BACKGROUND

Mr. Hollins is accused of assaulting and robbing a postal mail carrier and then using the fruits of that theft, a food stamps card. On May 25, 2017, he was charged in a three-count indictment alleging assault/robbery of a person in lawful possession or control of United States mail (Count 1), forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with an officer or employee of the United States (a postal carrier) (Count 2) and knowingly possessing the identification of another and that identification included electronic benefits for someone who had food stamps (count 3). (Indictment, ECF No. 1.)

Following Mr. Hollins' arrest in this case, he provided two statements to law enforcement officers. The Motion to Suppress seeks to exclude those statements because, according to Mr. Hollins, his requests for counsel were ignored by the officers after his right to counsel "arguably" attached and because his statements were allegedly coerced by law enforcement officers when they hit him during a break in his interrogation. (Mot. to Suppress, ECF No. 33; Objections to R&R, ECF No. 54.)

The evidence presented at the Suppression Hearing was quite extensive. The Prosecution called six (6) witnesses: Robert Weeks, Robert Riggs, Justin Crutcher, Jacoba Boyd, Brandon Guffey, and Gregory Newbery. The Defense called four (4) witnesses: Demarius Jones, Robert Brown, Gary Myles and De'Lewis Hollins. The parties introduced five exhibits: photos of the arrest scene; the warning and waiver of rights signed by Mr. Hollins; Mr. Hollins' statement with his *Miranda* Rights that was signed by him; and the Shelby County Sheriff's Office inmate information that includes a thumbnail photograph of Defendant's face and a blown-up-version of the same photograph. (Exhibit and Witness List, ECF No. 46.)

The Magistrate Court issued a thorough R & R, proposing that Defendant's claims of violations of his Fifth, Sixth and Fourteenth Amendment rights were not well-founded and that the Motion should be denied. (ECF No. 49.) Magistrate Judge Claxton's opinion contained a detailed summary of each witness' testimony. This Court reviewed the Suppression Hearing transcript, which comprised 258 pages.[1]

Robert Weeks is a Postal Inspector who was part of the team of officers who conducted surveillance and ultimately arrested Defendant on February 2, 2017, near the Dogwood Trace Apartments in Memphis, Tennessee. (Suppression Hr'g Tr., ECF No. 47, at PageIDs 73−79.) Inspector Weeks testified that when he arrested Defendant, there was no physical struggle. (*Id.*) Robert Riggs is also a Postal Inspector who assisted in the investigation and arrest of Defendant. Inspector Riggs testified that he never heard Defendant request an attorney. (*Id.* at PageIDs 86−100.) Inspector Riggs testified that the Memphis Police Department ("MPD") Officers came to the scene within a few minutes and transported Defendant from the scene. (*Id.*) Memphis Police Department (MPD) Officer Justin Crutcher testified that he and his partner, Jacoba Boyd, were dispatched to the Dogwood Trace Apartments to assist the Postal Inspection Service in an arrest and transport. (*Id.* at PageIDs 102−112.) They took separate cars to the scene and found Defendant seated on the curb. Officer Boyd put Defendant in his vehicle. Officer Crutcher testified that he did not engage in any physical violence or struggle with Defendant and did not observe any such struggle or violence toward Defendant at any time. (*Id.*)

---

[1] Because the Magistrate Court provided an excellent summary of the testimony, this Court will not recount all of the testimony in detail. The Court will provide a short reference to each witness.

Officer Jacoba Boyd's memory of the incident was not precise. (*Id.* at PageIDs 113−32.) This is understandable, given his limited involvement in the case. His only contact with the Defendant was to drive him from the scene of arrest to the MPD Precinct - about seven (7) to ten (10) minutes away. (*Id.*) Having said that, Officer Boyd did not see Defendant in any sort of physical struggle. Officer Boyd did not strike Defendant, nor did he see anyone else do so. Officer Boyd did not recall Defendant ever requesting an attorney during the ride to the precinct office. (*Id.*) Officer Boyd noted that he did not conduct any interrogation of Defendant while they were driving to the Precinct. (*Id.*) Officer Boyd testified that his usual practice was to not engage in a discussion with an arrestee. Thus, if he had had such a conversation with Mr. Hollins that day, it likely would have been memorable. (*Id.*)

Next, Postal Inspector Brandon Guffey testified concerning his participation in the interrogation of Defendant at the MPD Mt. Moriah Precinct. (*Id.* at PageIDs 132−58.) Inspector Guffey and another Postal Inspector, Gregory Newbery, encountered Defendant while he was cuffed to a bench in an interview room. The Postal Inspectors advised Defendant of his *Miranda* Rights at the beginning of their interview at approximately 11:11 a.m., and Mr. Hollins acknowledged this by signing the waiver form. (*Id.* at PageIDs 136−38, *Miranda* warning and waiver of rights form, Ex. 2.) The Inspectors remained in contact with Defendant until about 3:00 in the afternoon. If they were not in the room with him that day, they could observe him through a closed circuit television. MPD Detective Jones and Detective Brown participated in the questioning when Guffey and Newberry were not actively talking with Defendant. Inspector Guffey testified that there was an afternoon break, during which Detective Jones and Detective Brown allowed Defendant to walk outside and smoke a

4

cigarette. Following that break, Detectives Jones and Brown interviewed Defendant for a while before Inspectors Guffey and Newbery came back into the room. At that time, Defendant wrote a confession of his involvement in the robbery and signed the document which included another *Miranda* warning and waiver of rights. (*Id.* at PageIDs 141−44, Sworn Statement and Advice of Rights, Ex. 3.)

Postal Inspector Newbery testified about his interview of Defendant with Inspector Guffey. (*Id.* at PageIDs 159−79). Inspector Newbery testified that after an afternoon break in which Defendant was given an opportunity to smoke a cigarette, Defendant returned and "admitted" his involvement in the crime at issue by writing the sworn statement and waiver of his *Miranda* Rights. (*Id.*)

MPD Detective Demarius Jones was called by the Defense and he denied that he or Detective Brown ever became violent or abusive, nor did they in any way physically strike Defendant or offer him ten dollars to tell the truth. (*Id.* at PageIDs 183−209.) Detective Brown testified that he and Detective Jones took Defendant on a smoke break that lasted a few minutes and that Defendant ultimately confessed when they returned. (*Id.* at PageIDs 210−30.) Detective Brown denied that Defendant ever asked for a lawyer or that the officers ever struck or abused him in any way during their time with him. (*Id.*)

The investigator for the Federal Public Defender's Office, Gary Myles, testified about the photographs he took of the smoking area around the Precinct in question. (*Id.* at PageIDs 231−46.)

De'Lewis Hollins testified about his arrest and the aftermath, including claims that officers ignored his requests for an attorney and that he was hit by MPD officers shortly before signing his confession. (*Id.* at PageIDs 249−97.) Defendant testified that when MPD

5

Officer Boyd was driving him to the MPD Precinct he asked for an attorney, and Officer Boyd told him that he would notify the other officers of his request. (*Id.* at PageIDs 255−57.) Once Mr. Hollins arrived at the MPD Precinct, he claims to have been so intoxicated and confused that he did not understand the two (2) *Miranda* Rights waiver forms that he signed that day. (*Id.* at PageIDs 279−81.) Despite reading the terms and signing his name to both waiver forms, Defendant testified that he still expected the officers to make sure that he had a lawyer. (*Id.* at PageID 273.) Moreover, Defendant testified that, at one point, Detectives Brown and Jones took him for a "cigarette break" when they took him into a dark area and that one held his arms while the other hit him in the stomach and told him to quit "bullshitting" them about the case. When he stood and told them he did not know what they were telling him, Officer Jones hit him in the left side of his face. (*Id.* at PageIDs 265−68.) Shortly after that encounter, Mr. Hollins says that he agreed to provide a confession. (*Id.* at PageID 270.)

Magistrate Judge Claxton's R & R provided an in-depth summary of the testimony from all ten witnesses in this matter. (ECF No. 49.) This Court has reviewed the transcript of the hearing and adopts Magistrate Judge Claxton's thorough and accurate summary of the testimony. Magistrate Judge Claxton also suggested that De'Lewis Hollins' testimony was not credible.

**Standard of Review**

In 28 U.S.C. § 636, Congress provided the District Court the ability to assign matters and duties to Magistrate Judges. In this case, the Motion to Suppress was assigned to Magistrate Judge Claxton for a Report and Recommendation on the validity of that Motion. See *United States v. Curtis*, 237 F.3d 598, 602 (6th Cir. 2001); (*Gomez v. United States* 490 U.S. 858, 869–70 (1989); *see also Baker v. Peterson*, 67 Fed. App'x. 308, 310 (6th Cir. 2003).

"A District Judge must determine *de novo* any part of a Magistrate Judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(B); 28 U.S.C. § 636 (B)(1)(C). After reviewing the evidence, the District Court is free to accept, reject, or modify the proposed findings or recommendations of the Magistrate Judge. 28 U.S.C. § 636(B)(1)(C).

As to credibility, the District Court is expected to make a *de novo* <u>determination</u>, not necessarily conduct a *de novo* <u>hearing</u>. *United States v. Raddatz*, 447 U.S. 662, 673−74 (1980). By conducting the evidentiary hearing, the Magistrate Judge has the opportunity to observe and hear the witnesses and assess their demeanor, putting her in the best position to determine their credibility. *Moss v. Hofbauer,* 286 F.3d 851, 868 (6th Cir. 2002). The Magistrate Judge's assessment of witnesses' testimony is entitled to deference by the District Court. *United States v. Akins*, No. 08-cr-20397-JPM, 2011 WL 2636697, at *1 (W. D. Tenn. July 6, 2011); *United States v. Irrorere*, 69 Fed. App'x 231, 236 (6th Cir. 2003). In *United States v. Raddatz*, the Supreme Court instructed as follows:

> "We conclude that the due process rights claimed here are adequately protected by Section 636(B)(1). While the District Court Judge alone acts as the ultimate decision maker, the statute grants the Judge the broad discretion to accept, reject, or modify the Magistrate [Judge's] proposed findings. That broad discretion includes hearing the witnesses live to resolve conflicting credibility claims. Finally we conclude that the statutory scheme includes sufficient procedures to alert the District Court whether to exercise its discretion to conduct a hearing and view the witnesses itself."

447 U.S. at 680−81.

In *United States v. Robinson*, the court held "credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his *de novo* review of the record he finds a reason to question the magistrate judge's assessment." 2007 WL 2138635, at *1 (E.D. Tenn. July 23, 2007) (citing *Blizzard v. Quillen,* 579 F. Supp. 1446, 1449 (D. Del. 1984)). As noted in *Moss v. Hofbauer*,

"we find no reason to substitute our judgment for the credibility determination of the magistrate judge who had the opportunity to observe [the witnesses'] testimony and assess his demeanor on the witness stand." 286 F.3d 851, 868 (6th Cir. 2002) (citing *Peveler v. United States*, 269 F.3d 693, 702 (6th Cir. 2001) (refusing to second-guess the credibility determination of the magistrate judge, and noting the general reluctance of the Sixth Circuit to "set aside credibility determinations made by the trier of fact, who has had the opportunity to view the witness on the stand and assess his demeanor").

For reasons set forth below, this Court ADOPTS Magistrate Judge Claxton's findings of fact and her recommendations concerning the credibility determinations of the witnesses, including Defendant's, who appeared in her presence. Specifically, this Court finds that Defendant's testimony about asking for a lawyer and that he was hit by MPD officers lacks credibility. Moreover, this Court ADOPTS the Magistrate Court's recommendation to DENY the Motion to Suppress. The Objections to the R & R are also DENIED.

**Defendant's Objections to the Report and Recommendation**

Mr. Hollins claims that the Magistrate Judge failed to conduct the correct analysis of his claims that the officers violated his Sixth Amendment right to counsel, his Fifth Amendment right to counsel, and his Fourteenth Amendment right to due process.

**Sixth Amendment Claim**

Defendant agrees that the Sixth Amendment right to counsel did not attach when he was being driven to the MPD Precinct because the adversarial judicial process had not been initiated. Nevertheless, he claims the Magistrate Judge missed the point regarding the Sixth Amendment right to counsel during the custodial interrogation. Citing no case law in support of his position, Mr. Hollins says that the custodial interrogation is a "closer question."

8

According to Mr. Hollins, when a suspect is interviewed while in custody, it is tantamount to placing formal charges against that suspect such that his right to counsel should be invoked. Again, Mr. Hollins' arguments do not have the support of case law.

In the R & R, the Magistrate Judge suggested correctly that the Sixth Amendment right to counsel does not attach unless and until the Defendant is engaged in the adversarial judicial process. *See Montejo v. Louisiana*, 556 U.S. 778, 786 (2009); *Powell v. Alabama,* 287 U.S. 45, 57 (1932). Magistrate Judge Claxton properly recommended that such adversarial judicial process had not been initiated either during Defendant's transportation from the scene of the arrest to the Police Precinct or during Defendant's custodial interrogation. (ECF No. 49 at Page IDs 347−48.) Defendant's argument is contrary to well-established Supreme Court precedent, and this Court will not ignore the law on this point. Moreover, Defendant failed to mention in his objection that Magistrate Judge Claxton determined that Defendant's claims that he asked Officer Boyd for an attorney while he was being transported to the MPD Precinct was ***not credible***. (*Id.*) As noted above, this Court will not second-guess the credibility determinations made by Magistrate Judge Claxton. Therefore, this Court ADOPTS Magistrate Judge Claxton's credibility determination regarding Defendant's testimony and ADOPTS her recommendation with regard to the Sixth Amendment Claim. Accordingly, Defendant's Objection under the Sixth Amendment is DENIED.

**Fifth Amendment Claim**

Defendant's objections under the Fifth Amendment boil down to a dispute with the credibility determinations made by Magistrate Judge Claxton. Defendant focuses on the fact that Officer Boyd did not recall having a conversation with Defendant, and more specifically, did not recall his requesting an attorney. To the contrary, Defendant remembers that

conversation vividly and recalls asking for an attorney twice.  Defendant argues that the Magistrate Judge's recommendation was "improper and incorrect" because she found that Mr. Hollins did not ask Officer Boyd for an attorney "based on nothing other than the Magistrate Court's decision not to credit Mr. Hollins' testimony, without it being contradicted in any way." (ECF No. 54 at Page ID 364).  Mr. Hollins' argument is unpersuasive.

Detective Boyd's testimony was that he typically does not engage in conversation at all with suspects when transporting them from one location to another.  Officer Boyd's testimony that he did not recall any conversation with Defendant suggests to this Court that he followed his usual course.  If he had had such a conversation with Defendant, it would have stuck out in his mind and he would have remembered Defendant asking for an attorney.  Therefore, Detective Boyd's lack of recollection suggests to this Court that it did not happen and that the Magistrate Judge was correct.  Also, the Magistrate Court correctly found that Defendant's testimony about asking for an attorney on his way to the Precinct lacked credibility because Defendant actually signed two (2) written *Miranda* warnings and waivers during his interrogation at the MPD Precinct later that very day.  (R & R, ECF No. 49 at Page IDs 349−50.)  Moreover, this Court noticed in reading Mr. Hollins' testimony that he vacillated in his testimony between being sharp enough to recall with precision that he had asked for a lawyer in the early morning (when he was supposedly high and confused) but then claimed to not understand or recall clearly the facts surrounding the two (2) written *Miranda* rights waivers that he signed later that day.  Contrary to the Defendant's position, this Court finds that the Magistrate Court was both proper and correct in its credibility determination.

Just as the Magistrate Court quoted "when a defendant is read his *Miranda* rights (which include the right to have counsel present during interrogation) and agrees to waive

10

those rights, that typically does the trick[.]" *Montejo,* 556 U.S. at 786. For the reasons noted above, this Court ADOPTS the Magistrate Court's credibility determinations and her analysis in recommending that the Fifth Amendment claim by Defendant is not well-taken and should be DENIED. Thus, the Objection to the recommendation on the Fifth Amendment claim is also DENIED.

**Fourteenth Amendment Claim**

Defendant claims that Officers Jones and Brown took him to a back room in the MPD Precinct and punched him in violation of his Fourteenth Amendment rights. Defendant asserts that these punches overcame his will and he was coerced into giving statements about his involvement in the crimes with which he is charged in this case. Defendant discounts the Magistrate Court's findings "because it simply believed the police detectives who attacked Mr. Hollins instead of him." (ECF No. 54 at PageID 365.) It is important to note that each law enforcement officer who testified in this case at the suppression hearing testified that they had never assaulted or witnessed anyone assault Defendant during his time in custody. Moreover, these officers testified that Defendant never complained that anyone assaulted him. (Transcript, ECF No. 47 at Page IDs 80−81, 92−93, 115, 139, 167, 204, 224.) Defendant also questions the Magistrate Court's conclusion that Mr. Hollins' booking photograph (Ex. 5) did not show swelling on his left cheek.

Defendant's position minimizes and misstates the Magistrate Court's analysis. His argument is unconvincing. While credibility determinations often make the difference between winning and losing, the Magistrate Court's analysis of the issues was more thorough than simply taking one person's word over another's. For example, the Magistrate Court noted that none of the other officers or federal agents noticed anything unusual about the

Defendant's demeanor or any physical signs of his being hit when he returned from the smoke break.  This Court has read the hearing transcript and viewed the exhibits that were admitted, including the photographs of Mr. Hollins at the time of his arrest and the time of his booking at the Shelby County Facility.  (Exhibit and Witness List, ECF No. 46, Ex. 1 and 5.)  This Court has compared the arrest photograph (Ex. 1) and the close-up of Defendant's face when he was booked (Ex. 5) and fails to see what Defendant describes as swelling.  Therefore, the Court agrees with the Magistrate Judge's conclusion concerning the Fourteenth Amendment claim.

This Court will not disturb the credibility determinations of the Magistrate Court in the Suppression Hearing.  The Magistrate Court's findings of fact and her recommendations to deny Defendant's objections based on the Fourteenth Amendment are ADOPTED.  The Objections under the Fourteenth Amendment are likewise DENIED.

**Fruit of the Poisonous Tree**

Defendant's assertion that the evidence should be suppressed as "fruit of the poisonous tree" based on the *Wong Sun v. United States*, 371 U.S. 471, 484 (1963), is unavailing.  The Magistrate Court correctly recommended that there are no constitutional violations in this case.  Therefore, this Court ADOPTS the recommendation that the exclusionary rule does not apply.  Accordingly, the objection based on the fruit-of-the-poisonous-tree analysis is DENIED.

The Magistrate Judge's R & R including the Findings of Fact, Conclusions of Law and Recommendations for the disposition with regard to Defendant's Motion to Suppress is ADOPTED completely.  Defendant's Motion to Suppress is DENIED.  Moreover, the objections made to the R & R are also DENIED.

**SO ORDERED**, this 16th day of April, 2018.

                                                                                  THOMAS L. PARKER
                                                                                   UNITED STATES DISTRICT JUDGE